IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TEVIN SMITH,

          Plaintiff,

v.                                Civil Action No. 3:22cv4

OFFICER JENNIFER NELSON
& JOHN DOE,

          Defendants.

## OPINION

This matter comes before the Court on a motion for default judgment filed by the plaintiff, Tevin Smith ("Smith"). (ECF No. 46.) On January 3, 2022, Smith sued the defendants—Officer Jennifer Nelson ("Nelson") and John Doe, an unknown correctional officer—(1) under 42 U.S.C. § 1983 for acting deliberately indifferent to inmate safety, in violation of the Eighth Amendment (Count 1); and (2) under state law for committing gross negligence (Count II). (ECF No. 1.) Despite serving Nelson with the Complaint and Amended Complaint three times over the past two and a half years, Nelson has not entered an appearance in the matter or filed a responsive pleading. For the reasons stated below, the Court will grant Smith's motion for entry of default judgment as against Nelson.[1] (ECF No. 46.)

## I. BACKGROUND

### A. Relevant Facts

In January 2021, Smith was incarcerated at Sussex II State Prison, where Nelson and Doe worked as correctional officers. (ECF No. 22 ¶¶ 7–9.) Smith held an inmate employment position

---

[1] In considering Smith's motion, the Court relied solely upon Smith's Amended Complaint, (ECF No. 22), and his Memorandum in Support of his Motion for Default Judgment, (ECF No. 48). To date, Nelson has not submitted anything to the Court.

that required him to deliver meals to other inmates. (*Id.* ¶ 10.) On January 4, 2021, Smith delivered meals to inmates in Pod B. (*Id.* ¶ 13.) Smith's assigned pod, Pod A, lay directly across from Pod B, separated by "two sally ports with a corridor in between." (*Id.* ¶¶ 14, 16.) Each sally port had one controlled door that allowed people to move from a pod into the sally port and then another controlled door that led from the sally port into the corridor that connected Pod A's sally port to Pod B's sally port. (*Id.* ¶ 16.) The controlled doors and sally ports prevented inmates from moving freely between the pods. (*Id.* ¶ 17.) To gain access to the hallway connecting Pods A and B, a person would have to enter a sally port through a controlled door, wait for the door to shut, and then wait for the next controlled door to open into the hallway. (*Id.*) Correctional officers control all four doors between the pods from a control booth. (*Id.* ¶ 18.)

When Smith delivered meals in Pod B on January 4, 2021, Nelson was the correctional officer stationed in the control booth and "had the responsibility to control movement in and out of these pods by operating the controlled doors." (*Id.* ¶ 19.) The correctional officer assigned to Pod A, Doe, had left his station without getting anyone to cover for him, leaving Pod A unmanned. (*Id.* ¶ 38.) Nelson "was actually aware" that she needed to only open one door at a time "to maintain the safety and security of the facility and those in process of moving between" the pods and to "protect correctional officers, staff, visitors, and inmates." (*Id.* ¶¶ 20–21, 23.) Being a correctional officer at the prison, she knew that the facility housed "numerous violent offenders" and that "altercations between inmates [were] common." (*Id.* ¶ 24.) Additionally, Nelson knew that "failure to maintain proper control of the doors would create serious threats of danger to the safety of persons within the facility," including Smith, who moved between Pod B and Pod A delivering meals. (*Id.* ¶ 22.)

2

After Smith finished distributing meals in Pod B, he began to return to Pod A through the sally ports and doors controlled by Nelson. (*Id.* ¶ 25.) As Smith entered the hallway moving from Pod B to Pod A, Nelson allowed both of the doors in Pod A's sally port to open, rather than opening one at a time. (*Id.* ¶ 26.) Smith's cellmate, Carson Washington ("Washington"), located in Pod A, "was experiencing symptoms of a mental health disorder." (*Id.* ¶¶ 11–12.) Because both doors to Pod A were open, Washington was able to "rush[] into the corridor" between the pods and "attack[] Smith with a contraband knife." (*Id.* ¶ 27.) The attack lasted "several minutes." (*Id.* ¶ 30.) Though Nelson had training on how to respond to fights between inmates, she "took no action for a significant amount of time as [Washington] brutally assaulted [Smith]," did not call for back up, and did not intervene herself. (*Id.* ¶¶ 31–33.) Smith only got away from Washington by "dragging himself to a wheelchair in order to get out of the sally port," (*id.* ¶ 34), but not before he sustained "substantial injuries," (*id.* ¶ 46). The facility fired Nelson after the incident. (*Id.* ¶ 35.)

### *B. Procedural Background*

On January 3, 2022, Smith filed this lawsuit against Nelson and Doe. (ECF No. 1.) Smith served Nelson through substituted service on June 27, 2022, making Nelson's responsive pleading due on July 18, 2022. (ECF No. 15.) Nelson did not file a responsive pleading. On October 19, 2022, Smith moved to amend his complaint. (ECF No. 17.) The Court granted the motion on December 12, 2022, and directed the Clerk to docket Smith's Amended Complaint and for Nelson to respond to the Amended Complaint. (ECF No. 21.) Smith served Nelson personally by process server on March 14, 2023, making Nelson's responsive pleading due on April 4, 2023. (ECF No. 27.) Nelson, again, did not file a responsive pleading.

3

On May 15, 2023, Smith moved for default judgment against the defendants. (ECF No. 29.) The Court denied the motion for default judgment on July 19, 2023, and ordered Nelson to respond to Smith's Amended Complaint within thirty days of receiving the order. (ECF No. 31.) The Court additionally directed the Clerk to issue process for Nelson once more and directed the United States Marshals to serve Nelson. (ECF No. 31.) On August 18, 2023, the Marshals served Nelson by substituted service, making Nelson's responsive pleading due on September 8, 2023. (ECF No. 36.) Nelson did not file a responsive pleading.

On November 14, 2023, Smith moved for default judgment a second time. (ECF No. 38.) The Court issued an order denying the motion on April 30, 2024, because Smith did not first move for entry of default. Smith moved for default judgment a third time on May 14, 2024. (ECF No. 41.) The Court denied Smith's motion on August 9, 2024, again explaining to Smith that he must first move for entry of default. (ECF No. 42.) On September 26, 2024, the Court directed Smith to file a request for entry of default. (ECF No. 43.) Smith moved for entry of default and attached the affidavit as required by Fed. R. Civ. P. 55(a) on October 7, 2024. (ECF No. 44.) The Clerk entered default as to Nelson on October 8, 2024. Smith now moves for default judgment against Nelson. (ECF No. 46.) In addition to the *Roseboro* notice that Smith included in his motion for default judgment, the Court issued a *Roseboro* notice to Nelson on October 30, 2024, warning Nelson that she had until November 20, 2024, to respond to Smith's motion for default judgment. (ECF No. 49.) Nelson did not file a response.

## II. STANDARD OF REVIEW

When a defendant fails to defend against a case, the plaintiff may seek an entry of default. *See* Fed. R. Civ. P. 55(a). After the Clerk of Court enters default pursuant to Rule 55(a), the Court may enter default judgment against the defendant. *See* Fed. R. Civ. P. 55(b)(2). "When a

4

defendant defaults, he admits 'the plaintiff's well-pleaded allegations of fact.'" *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). Thus, in reviewing a motion for default judgment, the Court accepts the plaintiff's well-pleaded allegations regarding liability as true. *See Ryan*, 253 F.3d at 780. The Court must then determine whether the well-pleaded allegations support relief.

### III. JURISDICTION, VENUE, AND SERVICE OF PROCESS

For a court to render default judgment, (1) it must have subject matter jurisdiction and personal jurisdiction over the defaulting party; (2) venue must be proper; (3) and the court must be satisfied that the plaintiff properly served the defaulting party. *See, e.g., Evolution Strategies, LLC v. Unlimited Mktg. Enters. Inc.*, No. 1:19cv592, 2019 WL 5955379, at *1 (E.D. Va. Sept. 27, 2019), *report and recommendation adopted*, 2019 WL 5902116 (E.D. Va. Nov. 12, 2019).

First, the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Smith asserts a federal question with his § 1983 claim. Supplemental jurisdiction allows the Court to consider the state law gross negligence claim. *See* 28 U.S.C. § 1367(a). The Court has general personal jurisdiction over individuals who are domiciled within Virginia. *See Reddy v. Buttar*, 38 F.4th 393, 400 (4th Cir. 2022). For an individual to have domicile in a state, they must reside there and intend to remain. *Id.* Here, Smith does not allege Nelson's residence in his Amended Complaint. But the Court can also have personal jurisdiction over a party if the standards of both federal due process and the forum state's long-arm statute are satisfied. *See Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). Federal due process confers personal jurisdiction if a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting

*Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Section 8.01-328.1 of the Virginia Code, this forum's long-arm statute, "extends the jurisdiction of its courts as far as federal due process permits." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002).  A district court has either specific personal jurisdiction over a defendant "based on conduct connected to the suit" or general jurisdiction based on "continuous and systematic" activities in the forum state.  *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).  The well-pleaded facts allege that Nelson worked at Sussex II State Prison located in Sussex County, Virginia.  Nelson, therefore, engaged in continuous and systematic activities in the state of Virginia and is subject to personal jurisdiction in this Court.

Second, venue is proper under 28 U.S.C. § 1391(b)(2), because the actions that gave rise to this claim occurred within this Court's judicial district.  *See* E.D. Va. Loc. Civ. R. 3(B).

Finally, Smith properly served Nelson.  A private process server personally served the summons and Amended Complaint once by personal service to Nelson herself, (ECF No. 27), and the Marshals served Nelson once by substituted service to Nelson's father, (ECF No. 36).  *See* Fed. R. Civ. P. 4(e)(2)(A)–(B).

## IV. <u>LEGAL ANALYSIS</u>

### *A. § 1983 Claim*

Smith first brings a claim under § 1983 alleging Nelson acted deliberately indifferent when Washington attacked Smith.  The Eighth Amendment generally requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Cox v. Quinn*, 828 F.3d 227, 235 (4th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  Specifically, prison officials must "'protect prisoners from violence at the hands of other prisoners.'" *Brown v. N.C. Dep't of*

6

*Corr.*, 612 F.3d 720, 722–23 (4th Cir. 2010) (quoting *Farmer*, 511 U.S. at 833). To succeed on such a claim, the inmate must meet two standards. First, the "deprivation alleged must be, objectively, sufficiently serious." *Cox*, 828 F.3d at 235–36. Under this first prong, the prisoner "must allege a serious or significant physical or emotional injury resulting from the challenged conditions." *Id.* (internal citations omitted).

Second, the "prison officials must have had a 'sufficiently culpable state of mind'" which, "'in prison-conditions cases,'" is "'deliberate indifference' to inmate health or safety." *Id.* at 236 (quoting *Farmer*, 511 U.S. at 834). To demonstrate deliberate indifference, the plaintiff must show "'more than mere negligence' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." *Id.* (quoting *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015)) (alteration in the original). This standard is a "subjective" one, requiring the prison official to "'both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and . . . also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837.) The "factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. The prison official "must also subjectively be aware that [her] 'actions were inappropriate in light of that risk.'" *Cox*, 828 F.3d at 236 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)). A "prison official's response to a known threat to inmate safety must be reasonable." *Id.*

Because the Court, in reviewing a motion for default judgment, accepts the plaintiff's well-pleaded allegations regarding liability as true, the Court finds that Nelson acted with deliberate indifference to Smith's Eighth Amendment right to protection from inmate-on-inmate violence. *See Ryan*, 253 F.3d at 780. Here, Smith, an inmate at Sussex II State Prison, had an Eighth Amendment right for correctional officers, like Nelson, to not act deliberately indifferent to risks

of inmate violence. But Nelson did just that. Instead of following the procedure of locking and unlocking doors one at a time between the pods, Nelson unlocked both doors to Pod A while Smith moved from Pod B to Pod A. This allowed Washington to enter the hallway beyond Pod A and attack Smith—something he would not have been able to do if Nelson had followed proper protocol. As a correctional officer tasked with the control center duty of opening and locking doors within the prison, Nelson knew the protocol to only open one door at a time and that the protocol existed to prevent issues like what happened here. Additionally, not only did she act unreasonably in opening both doors, she also failed to try to break up the altercation or call for backup to do so. Because of all of this, Smith suffered "substantial injuries." (*See* ECF No. 22 ¶ 46.) Smith, therefore, alleged facts to satisfy both parts of a § 1983 deliberate indifference claim.

### B. Gross Negligence Claim

Smith also brings a state law claim of gross negligence against Nelson. To show gross negligence in Virginia, the plaintiff must demonstrate "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Commonwealth v. Giddens*, 295 Va. 607, 613, 816 S.E.2d 290, 294 (2018) (quoting *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487, 603 S.E.2d 916, 918 (2004)). "[A] claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." *Elliott v. Carter*, 292 Va. 618, 622, 791 S.E.2d 730, 732 (2016). Even ineffectual or inadequate efforts may meet the required degree of care, provided the efforts "were not so insufficient as to constitute the indifference and utter disregard of prudence that would amount to a complete neglect for [an individual's] safety." *Id.* at 623, 733. "There is adequate evidence to support a finding of gross negligence when a defendant is aware of a danger but fails to take any precautions to guard against that danger." *Caramillo v. Correct Care*

8

*Sols., LLC*, No. 2:19cv362, 2020 WL 4747786, at \*7 (E.D. Va. Feb. 28, 2020) (citing *Volpe v. City of Lexington*, 708 S.E.2d 824, 829 (Va. 2011); *Chapman v. City of Va. Beach*, 475 S.E.2d 798, 801 (Va. 1996)). Indeed, "'gross negligence does not require a finding that a defendant *knew* of a substantial risk,' '[i]t is enough that the defendant *should* have been aware of that risk.'" *Id.* (first emphasis added) (quoting *Hixson v. Hutcheson*, Nos. 5:17cv32; 5:18cv1, 2019 WL 302516, at \*7 (W.D. Va. Jan. 23, 2019)). *But see Reid v. Newton*, No. 3:13-CV-572, 2014 WL 1493569, (E.D. Va. Apr. 14, 2014) at \*7 ("In the case of failure to act, deliberate conduct necessarily implies actual knowledge of facts that create a choice to act or abstain.").

Here, Nelson acted with gross negligence when she failed to operate the doors properly in the prison, allowing Smith to become subject to an attack by another inmate in an area that the inmate should not have been able to access. As a correctional officer with training on the job, Nelson knew about the risk of an inmate escaping a pod and hurting another if the doors were not opened properly. Yet, she did not exercise any care when opening both doors to Pod A, nor did she exercise care in assisting Smith once Washington breached the sally port. Nelson acted with complete indifference to Smith's safety and well-being. Accordingly, the Court will grant the motion for default judgment as to the issue of liability.

### *C. Damages*

Smith seeks compensatory damages for his "[e]xtreme pain, fright, suffering, humiliation, disfigurement, and loss of dignity" as well as "[l]oss of future earnings" and "[f]uture medical expenses" as a result of this incident. (ECF No. 22, at 8.) He asks for an amount of $3,000,000, together with "costs incurred in the pursuit of just resolution of this matter, prejudgment and post-judgment interest, and attorneys' fees." (*Id.* at 9.)

While a court in granting default judgment takes the well-pleaded factual allegations as true, "a party who defaults does not admit the allegations in the complaint as to the amount of damages." *Wilcox v. Transmodal Sols.*, 473 F. Supp. 3d 574, 584 (E.D. Va. 2020); *see* Fed. R. Civ. P. 8(b)(6). The court must "make an independent determination regarding damages." *Id.* (internal citations omitted). Federal Rule of Civil Procedure 55(b)(1) allows the clerk to enter default judgment for a "sum certain." But the court may conduct a hearing to "determine the amount of damages" or "conduct an accounting" of uncertain damages. Fed. R. Civ. P. 55(b)(2)(A)–(B).

Here, Smith submits medical bills showing sums certain for his injuries but asks the Court to hold a hearing on the issue of damages due to his request for non-economic damages and punitive damages. (ECF No. 48, at 5.) Smith also seeks to give the Virginia Attorney General's Office "one final opportunity to participate and defend on the issue of damages," asserting that VaRISK, an insurer for correctional officers, should defend Nelson in the suit. (*Id.* at 6.) Because the amount of Smith's damages are uncertain, the Court declines to determine damages at this stage.

## V. CONCLUSION

Because the Court takes the well-pleaded facts as true and those facts show that Nelson acted both with deliberate indifference and with a complete disregard to Smith's safety, and that Smith suffered serious injury as a result, the Court will grant Smith's motion for default judgment against Nelson as to liability only. (ECF No. 46.)

An appropriate order will accompany this opinion.

Let the Clerk mail a copy of this Opinion to all counsel of record and to the defendant via U.S. Mail at the address listed on the summons, (ECF No. 9).


Date: 21 November 2024
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

11